CHARLES E. AND IREDIA IRBY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Irby v. Commissioner
Docket No. 4707-79.
United States Tax Court
T.C. Memo 1981-399; 1981 Tax Ct. Memo LEXIS 351; 42 T.C.M. (CCH) 556; T.C.M. (RIA) 81399; July 30, 1981. Charles Irby, pro se. Lawrence D. Garr, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in and additions to the petitioners' Federal income tax: Additions to Tax
Taxable
Late Filing of Return
Negligence
Year
Deficiency
I.R.C. sec. 6651(a) [1]
I.R.C. sec. 6653(a)
1975
$ 2,019.78
$ 37.04
$ 103.19
1976
1,836.53
91.83
The issues are: (1) whether petitioners reported all of the gross receipts in 1975 and 1976 from petitioner-husband's (Mr. Irby) taxicab business; (2) whether petitioners are entitled to a deduction *352 for depreciation, insurance, cab association fee, interest and gasoline expenses relating to Mr. Irby's taxicab business for 1975 and 1976, and for repair expenses relating to such business for 1975, in excess of those allowed by the Commissioner; (3) whether petitioners reported all of Mr. Irby's gross receipts from his driving school business in 1975; (4) whether petitioners are entitled to deductions for depreciation, rent, insurance, gasoline, oil, grease, and answering service expenses relating to Mr. Irby's driving school business for 1975 and 1976, and for taxes and repair expenses of the business for 1975, in excess of those allowed by the Commissioner; (5) whether petitioners are entitled to a deduction for child care expenses in 1975 and a credit in 1976 in excess of those allowed by the Commissioner; (6) whether petitioners are liable for a late-filing addition to tax pursuant to section 6651(a) for 1975; and (7) whether petitioners are liable for a negligence addition to tax for 1975 and 1976 pursuant to section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated *353 herein by this reference. At the time the petition herein was filed, the petitioners resided in Washington, D.C. The petitioners mailed their joint Federal income tax return for the taxable year 1975 on April 29, 1976, to the Internal Revenue Service Center, Philadelphia, Pennsylvania. The return was filed upon receipt May 3, 1976, with the Director of the Baltimore District of the Internal Revenue Service. Petitioners timely filed their joint Federal income tax return for the taxable year 1976 with the Director of the Baltimore District, Internal Revenue Service. The following table presents a broad overview of the disputed items in this case, followed by more detailed factual findings: 1975
Returned by
Determined by
Item
Petitioners
Respondent
Adjustment
TAXI CAB BUSINESS: Gross Income
$ 3,255.00
$ 5,450.99 $ 2,195.99 Operating Expenses: Depreciation: Taxi Cab (1974 Malibu)
800.00
770.00 30.00 Air Conditioner (installed
6/14/75)
48.00 (48.00)
Taxes on Business Property
84.00
84.00 Repair Expenses for cab
535.00
180.29 354.71 Cab Ass'n fees & insurance
1,063.00
838.05 224.95 Interest expense on business
indebtedness
205.00
136.47 68.53 Gasoline expense
1,500.00
1,007.00 493.00 Airport tolls
160.00
160.00 Car washes
100.00
100.00 Placards, pens, clips,
wrist watch repair
51.00
51.00 Operator's permit renewal
12.00
12.00 Personal use of 1974 Malibu
(356.18)
356.18 TOTAL OPERATING EXPENSES
$ 4,510.00
$ 3,030.63 $ 1,479.37 DRIVING SCHOOL BUSINESS: Gross Income
$ 7,976.00
$ 9,096.00 $ 1,120.00 Expenses: Depreciation: Furniture & fixtures
75.00
75.00 1973 Nova (traded-in
9/22/73)
815.00
815.00 1974 Nova (traded-in
10/10/75)
1,330.00
1,073.00 257.00 1976 Malibu
278.00
225.00 53.00 TOTAL DEPRECIATION
$ 2,498.00
$ 1,373.00 $ 1,125.00 Subtotals carried
forward
$ 2,498.00
$ 1,373.00 $ 1,125.00 Taxes on business property
423.00
321.00 102.00 Rent allocable to home
office
480.00
206.40 273.60 Repair expenses for driving
school vehicles
408.00
233.76 174.24 Insurance on 1974 Nova and
1976 Malibu
600.00
572.30 27.70 Legal and professional fees
200.00
200.00 Interest on business
indebtedness
95.00
112.49 (17.49)
Gasoline
3,012.00
1,324.00 1,688.00 Oil, grease
49.00
49.00 Answering services &
advertisement
480.00
443.20 36.80 Car washes
170.00
170.00 Office expense
12.00
12.00 Telephone & advertisement
Parking fees
TOTAL OPERATING EXPENSES
$ 8,427.00
$ 5,017.15 $ 3,409.85 Child care expense:
$ 2,033.00
$ 1,820.00 $ 213.00 (credit claimed for 1976)
*354 1976
Returned by
Determined by
Item
Pertitioners
Respondent
Adjustment
TAXI CAB BUSINESS: Gross Income
$ 940.00 $ 3,192.44 $ 2,252.44 Operating Expenses: Depreciation: Taxi Cab (1974 Malibu)
799.00 770.00 29.00 Air Conditioner (installed
6/14/75)
89.00 (89.00)
Taxes on Business Property
100.00 100.00 Repair Expenses for cab
227.00 227.00 Cab Ass'n fees & insurance
1,230.00 1,048.93 181.07 Interest expense on business
indebtedness
205.00 136.47 68.53 Gasoline expense
410.00 678.29 (268.29)
Airport tolls
45.00 45.00 Car washes
84.00 84.00 Placards, pens, clips,
wrist watch repair
Operator's permit renewal
Personal use of 1974 Malibu
(487.91)
487.91 TOTAL OPERATING EXPENSES
$ 3,100.00 $ 2,690.78 $ 409.22 DRIVING SCHOOL BUSINESS: Gross Income
$ 10,688.00 $ 10,688.00 Expenses: Depreciation: Furniture & fixtures
75.00 75.00 1973 Nova (traded-in
9/22/73)
1974 Nova (traded-in
10/10/75)
1976 Malibu
1,666.00 1,350.00 316.00 TOTAL DEPRECIATION
$ 1,741.00 $ 1,425.00 $ 316.00 Subtotals carried
forward
$ 1,741.00 $ 1,425.00 $ 316.00 Taxes on business property
149.00 149.00 Rent allocable to home
office
600.00 206.40 393.60 Repair expenses for driving
school vehicles
218.00 218.00 Insurance on 1974 Nova and
1976 Malibu
709.00 632.19 76.81 Legal and professional fees
300.00 300.00 Interest on business
indebtedness
474.00 295.32 178.68 Gasoline
[1] 4,788.00 2,325.00 2,463.00 Oil, grease
Answering services &
advertisement
493.00 463.20 29.80 Car washes
182.00 182.00 Office expense
11.00 11.00 Telephone & advertisement
144.00 144.00 Parking fees
161.00 161.00 TOTAL OPERATING EXPENSES
$ 9,970.00 $ 6,512.11 $ 3,457.89 Child care expense:
$ 2,256.00 $ 1,200.00 $ 1,056.00 (credit claimed for 1976)
(451.00)
(240.00)
[2] 211.00 *355 The other adjustments which the Commissioner made to petitioners' taxable income are "mechanical," i.e., they depend upon the petitioners' adjusted gross income. In late 1974, Mr. Irby began operation of a taxicab business on a part-time basis. He was, in 1975 and 1976, an owner-driver, non-radio, for Yellow Cab Association in Washington, D.C. Most of his trips were within the District of Columbia. He operated his cab a total of 153 days in 1975. He maintained manifests (records) of his cab trips for each day, marking down, for each trip, figures purporting to represent the number of passengers, the point of origin, point of destination, fares charged, and tips received. Mr. Irby operated his cab a total of 39 days between May 13, 1976, and December 31, 1976. Petitioners retained manifests for this portion of 1976. Petitioners have not retained manifests for the period January 1 through May 12, 1976. Mr. Irby drove his cab *356 a total of 17,530 miles in 1975 and 11,230 miles in 1976, of which 2,325 miles in each year were for non-business purposes. The Commissioner determined that the manifests did not accurately reflect petitioners' gross taxicab income and that no other records were maintained that did. In September 1974, the public Service Commission of the District of Columbia undertook a study to determine, interalia, the hourly gross revenues which a full-time District of Columbia taxicab driver could earn under then-existing District taxicab rates. The study was based upon an analysis of thirteen drivers covering their operations during the four-week period November 10 to December 8, 1974. The drivers were required to drive approximately 40 hours per week and to drive in at least one rush hour period per day, if they in fact operated on that day. They were not to be selective in their choice of passengers, and no restrictions were placed upon them as to the areas in the District where they might operate or as to specific days on which they might operate. They were permitted to operate according to their usual routine. The survey produced the following data: Total
Total
Total
Revenue
Tips
Total
Fares
Tips
Revenues
Per
as %
Type of Trip
Mileage
Reported
Reported
Reported
Mile
of Fare
All trips 23,852
$ 8,472.14
$ 795.60
$ 9,267.74
$ .3886
9.391
Intra-District
19,274
6,256.25
619.55
6,875.80
.3567
9.903
Interstate
4,578
2,215.89
176.05
2,391.94
.5225
7.945
Intra-District
(radio)
6,608
2,065.98
159.50
2,225.48
.3368
7.720
Intra-District
(non-radio)
12,666
4,190.27
460.05
4,650.32
.3671
10.979
*357 On February 19, 1976, the Public Service Commission issued Final Order No. 5769 increasing the fares which taxicab drivers in the District of Columbia were permitted to charge. The manifests which Mr. Irby retained for 1975 show a relatively high amount of tips reported as compared to fares charged through May 16, 1975. However, subsequent to this date, almost no tips are recorded for 1975. The manifests retained for 1976 also reflect almost no tips. Many fares for which no tips were reported were well over $ 5 and were charged for trips to and from some of Washington's most fashionable districts. The Commissioner computed Mr. Ibry's gross income from the taxicab business for 1975 and 1976 by multiplying his business mileage by $ .3585. On September 20, 1974, Mr. Irby purchased a 1974 Chevrolet Malibu for use as a taxi. The total net cost of the vehicle was $ 3,891.76. Petitioners took $ 300 in depreciation on the taxi in 1974 leaving them with an adjusted basis of $ 3,591.76 and a remaining useful life of 56 months as of January 1, 1975. On June 14, 1975, Mr. Irby purchased and installed an air conditioner in his cab for a net price of $ 354.71. The Commissioner *358 determined that this was a capital expenditure for an asset with a four-year useful life. Petitioners paid for repairs for automobiles used in their businesses totaling $ 414.05 in 1975, $ 180.29 of which was allocable to the taxicab. The $ 354.71 disallowed for the cab, listed in the table above, represents the cost of the air conditioner. The amount which the Commissioner allowed petitioners for cab association fees for 1975 ($ 708.75) was obtained by multiplying the $ 15.75 weekly fee by 45 payments. Petitioners, however, made 52 payments in 1975. Petitioners paid $ 821.63 for cab association fee payments in 1976. Petitioners paid $ 129.30 for cab insurance in 1975 and $ 227.30 in 1976. Petitioners secured a loan of $ 3,000 on September 24, 1974, to purchase their cab. The total interest charge over 36 months was $ 409.40. The Commissioner allowed petitioners interest expenses for one-third of this amount, $ 136.47, in each of the taxable years 1975 and 1976. The Commissioner allowed petitioner $ 1,007 for cab gasoline purchases for 1975. This was the amount reported on the taxicab manifests for that year. For 1976, the manifests retained by the petitioners recorded *359 cab gasoline purchases of $ 153. Respondent allowed petitioners $ 678.29 for gasoline expenses for 1976, computed by multiplying the cab mileage for 1976, 11,230 miles, by the cost per mile for gasoline as indicated by the 1974 Public Service Commission survey ($ .0539), adjusted for inflation (12 percent). The coefficient used was $ .0604. In 1975 and 1976 petitioners used their cab 13.3 percent and 20.7 percent of the time, respectively, for personal purposes. The Commissioner disallowed $ 356.18 and $ 487.91 in 1975 and 1976, respectively, as personal use to reflect the adjustment such use would have upon the allowed depreciation, repairs, insurance, gasoline, and uncontested cab expenses. In 1971 Mr. Irby and a friend formed the Master's Driving School. The school taught inexperienced drivers how to drive. In 1975 and 1976, Mr. Irby maintained appointment calendars which contained the names of his students and the time of their lessons. No record of the amount charged or paid was maintained. There were a total of 760 one-hour lessons given in 1975 and 830 in 1976 reported on the appointment calendars. Petitioners did not maintain any records of the income or expenses *360 of the school. During 1975, the Easy Method Driving School, the Washington area's largest driving school, charged $ 11.90 for each 45 minute lesson until April 1 and $ 8.50 per 30 minute lesson thereafter. The Commissioner determined petitioners' gross income from the school for 1975 by multiplying 760 lessons by $ 12 and subtracting $ 24 for two lessons given to a non-paying relative. In fact, petitioners charged only $ 10 per hour in 1975. On September 22, 1973, Mr. Irby purchased a 1974 Nova. The net price was $ 3,992. After accounting for the trade-in of a 1973 Nova in connection with the purchase, the petitioners had a basis in the 1974 Nova of $ 4,286. As of January 1, 1975, their adjusted basis was $ 2,423 and there was a remaining useful life of 21 months. The 1974 Nova was traded in on October 10, 1975, for a 1976 Chevrolet Malibu. The correct depreciation for 1975 for the 1974 Nova was $ 1,073. The petitioners' adjusted basis in the 1976 Malibu upon acquisition was $ 4,050. Its useful life was three years. Petitioners were allowed depreciation on the 1976 Malibu of $ 225 for 1975 and $ 1,350 for 1976 by the Commissioner in his statutory notice of deficiency. *361 Petitioners have paid $ 381 of the $ 423 claimed for taxes on Driving School property for 1975. The rent expense petitioners claimed on their 1975 and 1976 returns in connection with the Driving School was for a portion of their apartment they claimed was used for Driving School business. Petitioners and their two children lived in an apartment consisting of 2 bedrooms, a dining room, living room, and kitchen. Their rent for the apartment was $ 2,076 each year. The petitioners paid $ 414.05 for repair expenses of the automobiles used in their taxicab and Driving School businesses, of which $ 233.76 was allocable to the Driving School automobiles. Petitioners paid $ 572.30 for insurance on the driving school automobiles for 1975 and $ 632.19 for 1976. Petitioners obtained a $ 3,370.70 loan on September 23, 1973, to purchase the 1974 Nova. The total interest charge over 36 months was $ 455.02. The Commissioner allowed petitioners interest from January 1, 1975, to October 21, 1975, of $ 87.88. Petitioners obtained a loan of $ 4,043 from General Motors Acceptance Corporation to purchase their 1976 Malibu. The total interest charged over 42 months was $ 1,033.72. *362 The Commissioner allowed an interest deduction of $ 24.61 in 1975 as only one payment was made in that year. He allowed $ 295.32 in 1976 based upon 12 payments made that year. During 1975, Mr. Irby drove the 1974 Nova 16, 187 miles and the 1976 Malibu 4,215 miles in connection with operating the Driving School and averaged 9 and 14.5 miles per gallon, respectively. From these figures the Commissioner computed a $ 1,324 gasoline expense deduction using a price for gasoline of $ .63 per gallon on the 1974 Nova and $ .66 per gallon on the 1976 Malibu. For 1976, petitioners claimed a combined deduction of $ 4,788 for gasoline, oil, grease, and filters relating to trhe Driving School. The Commissioner allowed petitioners a deduction for gasoline of $ 2.50 per lesson and $ 250 for oil, grease, and filters. Petitioners made payments for telephone answering services relating to the Driving School of $ 443.20 for 1975 and $ 463.20 for 1976. Petitioners paid for child care $ 35 per week in 1975 for a total of $ 1,820. Petitioners made child care payments of $ 1,200 in 1976. OPINION This is essentially a substantiation and reconstruction of income case. Therefore, we emphasize *363 at the outset that, as to each item in dispute, petitioners have the burden of proving the Commissioner's determination erroneous. Welch v. Helvering, 290 U.S. 111 (1933). We now proceed to set out and discuss our conclusions concerning each issue herein. Issue 1. Gross Income From the Taxicab Business
We agree with respondent that the records which Mr. Irby maintained of his cab fares and tips did not accurately reflect his gross income from this business. It seems to us unusual at the very least that no tips are recorded in Mr. Irby's manifests after May 16, 1975. We find incredible the proposition that Mr. Irby received no tips following this date. Respondent's use of the 1974 Public Service Commission Survey to reconstruct Mr. Irby's income is not only reasonable but highly favorable to the taxpayer, as it does not reflect the higher rates in effect after February 19, 1976. [2]
*364 We decide for respondent on this issue. Issue 2. Operating Expenses of Taxicab Business
It is undisputed that petitioners made 52 payments of $ 15.75 to the cab association in 1975. However, the Commissioner only allowed a deduction for 48 payments. Therefore, his determination as to this item is erroneous and petitioners are entitled to deduct the full 52 payments or $ 819. Petitioners have not shown that they are entitled to greater deductions for these expenses than were allowed by the Commissioner. Issue 3. Gross Income From the Driving School
The parties have stipulated that no records were kept of the petitioners' income from and expenses related to the Driving School. The Commissioner reconstructed their gross income from this business for 1975 by using a rate of $ 12 per hour. Petitioner has shown, however, through his testimony and that of two other witnesses that a $ 10 rate was actually charged. We so find. Therefore, petitioners' gross income from the Driving School for 1975 is $ 7,580 (758 paid hours at $ 10 per hour). Issue 4. Expenses of the Driving School
The petitioners acquired the 1976 Malibu on October 10, 1975, for use in *365 their Driving School. Its useful life at acquisition was 36 months and it was used by petitioners for 2-2/3 months in 1975. Therefore, $ 300 [($ 4,050/36) x 2.67 months in 1975], rather than $ 225, should have been allowed as depreciation for 1975. The parties stipulated that petitioners verified $ 381 of the $ 423 taxes on business property and yet the Commissioner allowed only $ 321. We conclude that $ 381 should be allowed. Petitioners have not shown error in the Commissioner's determination of other expenses relating to the Driving School. As petitioners kept no adequate records and have offered no other evidence of these expenses, they can hardly be heard to complain of imprecision in the Commissioner's computation. Issue 5. Child Care Expenses
The petitioners verified only $ 1,820 of these payments for 1975 and none for 1976. The Commissioner, however, allowed $ 1,200 of payments for 1976 (resulting in a $ 240 credit). Petitioners have not presented any evidence that they expended more for this item than was allowed. We accordingly sustain the Commissioner's determination on this issue.
Issue 6. Late Filing Addition to Tax
Section 6651(a)(1) of the Internal Revenue Code *366 of 1954 provides that if the taxpayer fails to file his income tax return on time, an addition to tax is imposed equal to 5 percent of the amount of tax required to be shown on the return for each month or fraction of a month that the return is not filed, up to a total of 25 percent of the tax. However, no addition to tax will be imposed if the taxpayer can show that his failure to file the return was due to reasonable cause and was not due to willful neglect. In this case, the evidence shows that the petitioners did not mail their 1975 Federal income tax return to the Internal Revenue Service until April 29, 1976, almost fifteen days late. Pettioners have offered no explanation for this late filing and hence have not shown that it was due to reasonable cause and not willful neglect. Therefore, the late filing addition to tax was properly imposed. Issue 7. Negligence
Section 6653(a) of the Internal Revenue Code of 1954 provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, an addition to tax equal to 5 percent of the underpayment shall be imposed. The petitioners have the burden *367 of proving that they were not negligent. Welch v. Helvering, 290 U.S. 111 (1933). In this case, we feel that part of the petitioners' underpayments for 1975 and 1976 was due to negligence because it is negligent not to maintain adequate records of one's economic activities from which to accurately compute income and deductions. The petitioners kept inadequate records of the taxicab business and no records of the Driving School. Therefore, an addition to tax for negligence is appropriate. As we have redetermined items of gross income and of deduction, the deficiency and additions to tax will have to be recomputed accordingly. In particular, the adjustments for petitioners' personal use of the cab must be recalculated. It is not at all clear to the Court just how the Commissioner arrived at these. We trust that respondent will enlighten us in the Rule 155 computations. We also note that any interest or taxes disallowed as a business expense on account of these adjustments are still allowable as itemized deductions. The recomputations should account for this fact. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
1. Total claimed for gasoline, oil, grease, and filters. No allocation was made to separate categories. ↩
2. This adjustment directly increases petitioners' tax liability rather than taxable income, as is the case with other adjustments.↩
2. It is not clear how the Commissioner arrived at the $ .3585 figure.It seems to us that the $ .3671 intra-District non-radio figure might have been more appropriate. This would, however, have been even less favorable to the taxpayer than the method used and respondent does not contend for a a higher figure.↩